UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE INCLUSIVE ACCESS COURSE MATERIALS ANTITRUST LITIGATION<br><br>This Document relates to:<br><br>20cv6339 | MASTER FILE NO.<br>20 MDL NO. 2946 (DLC) |

**DEFENDANTS MCGRAW HILL LLC, PEARSON EDUCATION, INC., AND CENGAGE LEARNING, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS RETAILER PLAINTIFFS' SECOND AMENDED COMPLAINT AGAINST EDUCATIONAL PUBLISHERS ENFORCEMENT GROUP PURSUANT TO FED. R. CIV. P. 12(b)(6), OR, IN THE ALTERNATIVE, PURSUANT TO FED. R. CIV. P. 12(b)(2)**

| | |
|---|---|
| **PATTERSON BELKNAP WEBB & TYLER LLP**<br>1133 Avenue of the Americas<br>New York, NY 10036<br>Telephone: (212) 336-2000<br>Facsimile: (212) 336-2222<br>*On behalf of Defendant McGraw Hill LLC* | **FRESHFIELDS BRUCKHAUS DERINGER US LLP**<br>700 13th Street NW, 10th Floor<br>Washington, DC 20005<br>Telephone: (202) 777-4500<br>Facsimile: (202) 777-4555<br>*On behalf of Defendant Cengage Learning, Inc.* |
| **STEPTOE & JOHNSON LLP**<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036<br>Telephone: (202) 429-3000<br>Facsimile: (202) 429-3902<br>*On behalf of Defendant Pearson Education, Inc.* | |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................1

II. ARGUMENT ....................2

A. The Claims Against EPEG Should Be Dismissed Under Rule 12(b)(6) ....................2

i. Retailer Plaintiffs Do Not Allege Facts Establishing That EPEG Is an Unincorporated Association Under Federal Law ....................3

ii. Retailer Plaintiffs Do Not Allege Facts That Demonstrate That EPEG Is An Unincorporated Association Under Delaware Law ....................6

B. The Claims Against EPEG Should Be Dismissed Under Rule 12(b)(2) Because EPEG Does Not Have a Legal Existence ....................7

III. CONCLUSION ....................8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bobe v. Lloyd's*,
   27 F.2d 340 (S.D.N.Y. 1927), *aff'd per curiam*, 27 F.2d 347 (2d Cir. 1928)............................4

*California Clippers, Inc. v. U.S. Soccer Football Ass'n*,
   314 F. Supp. 1057 (N.D. Cal. 1970) ..................................................................................3, 5

*Cengage Learning, Inc., et al. v. Doe 1, et al.*,
   No. 1:20-cv-00769 (S.D.N.Y. 2020)........................................................................................4

*DeSouza v. Pettinaro Constr. Co.*,
   No. CIV 05-787-SLR, 2009 WL 1220533 (D. Del. May 5, 2009) ..........................................7

*Easter v. Virginia*,
   No. 4:05CV162, 2006 WL 5915495 (E.D. Va. Sept. 5, 2006), *aff'd sub nom.
   Easter v. U.S. Dep't of Health & Human Servs.*, 222 F. App'x 255 (4th Cir.
   2007) ........................................................................................................................................7

*Furek v. Univ. of Del.*,
   594 A.2d 506 (Del. 1991) ........................................................................................................6

*Goldenberg v. Indel, Inc.*,
   741 F. Supp. 2d 618 (D.N.J. 2010) ......................................................................................2, 3

*In re Magnetic Audiotape Antitrust Litig.*,
   No. 99 CIV. 1580 LMM, 2000 WL 1855119 (S.D.N.Y. Dec. 19, 2000) ..............................3, 4

*McGraw-Hill Global Education Holdings, LLC, et al. v. Wang*,
   No. 6:17-cv-06574 (W.D.N.Y. 2017) ......................................................................................5

*Menowitz v. Brown*,
   991 F.2d 36 (2d Cir. 1993) ......................................................................................................6

*In re Mirena IUD Prod. Liab. Litig.*,
   29 F. Supp. 3d 345 (S.D.N.Y. 2014) .......................................................................................6

*MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*,
   No. 15-CV-3997 JMF, 2015 WL 6685523 (S.D.N.Y. Oct. 29, 2015) .....................................7

*Nahas v. Shore Med. Ctr.*,
   No. CV 13-6537, 2018 WL 1981474 (D.N.J. Apr. 27, 2018) ..................................................3

*Nelly de Vuyst, USA, Inc. v. Europe Cosmetiques, Inc.*,
   No. 11 CV 1491 VB, 2012 WL 246673 (S.D.N.Y. Jan. 6, 2012) ............................................8

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998) ................................................................................................5

*Pearson Education, Inc., et al. v. FBAAZ Corp.*,
    No. 1:17-cv-03872 (S.D.N.Y 2017) ...................................................................................4

*Pickett v. Migos Touring, Inc.*,
    420 F. Supp. 3d 197 (S.D.N.Y. 2019) ................................................................................8

*Pisauro v. Silvia*,
    No. CV 15-02832, 2016 WL 8729339 (W.D. La. Feb. 26, 2016) .....................................7

*Roby v. Corp. of Lloyd's*,
    796 F. Supp. 103 (S.D.N.Y. 1992), *aff'd*, 996 F.2d 1353 (2d Cir. 1993) ..............................2, 4

*Twardowski v. Jester*,
    163 A.2d 242 (Del. Ch. 1960) ...........................................................................................6

**Statutes**

Delaware Code Section 3904 ......................................................................................................6

15 U.S.C. § 1 ................................................................................................................................7

15 U.S.C. § 7 ................................................................................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) .......................................................................1, 2, 7, 8

Federal Rule of Civil Procedure 12(b)(6) ................................................................... *passim*

Federal Rule of Civil Procedure 17(b) .........................................................................2, 4, 7

Federal Rule of Civil Procedure 17(b)(3)(A) ............................................................2, 3,6, 7

Defendants McGraw Hill LLC ("McGraw Hill"); Pearson Education, Inc. ("Pearson"); and Cengage Learning, Inc. ("Cengage") (collectively, the "Publishers") move to dismiss Retailer Plaintiffs' claims against the Educational Publishers Enforcement Group ("EPEG") under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, under Federal Rule of Civil Procedure 12(b)(2).[1]

## I.      INTRODUCTION

The Second Amended Class Action Complaint ("SAC") marks the Retailer Plaintiffs' third attempt to allege claims against EPEG. But despite Retailer Plaintiffs' efforts to cure the deficiencies of their prior pleadings, their latest complaint suffers from the same fatal defect as the others: EPEG is not a legal entity that can be sued, and Retailer Plaintiffs do not and cannot plausibly plead otherwise. As Retailer Plaintiffs allege, EPEG is a group of publishers that, as the name "Educational Publishers Enforcement Group" suggests, seek to enforce their respective intellectual property rights against widespread, global infringement, including the manufacture and distribution of counterfeit textbooks and associated materials. *See* SAC ¶¶ 65, 107. Retailer Plaintiffs acknowledge that EPEG includes not only the defendant Publishers, but also other publishers that are not named as defendants and are not even alleged to have been members of the purported conspiracy. SAC ¶¶ 64 n.2, 110.

Retailer Plaintiffs' claims against EPEG should be dismissed under Rule 12(b)(6) because Retailer Plaintiffs do not and cannot allege any facts to support their conclusory allegation that EPEG is an unincorporated association that is capable of being sued under federal

---

[1] Retailer Plaintiffs assert only three of the fourteen counts in their Second Amended Class Action Complaint ("SAC") against EPEG: Counts 1, 3, and 9. All three of those claims suffer from all of the flaws described in the Memorandum of Law In Support of Defendants' Motion to Dismiss the Plaintiff Retailers' Second Amended Class Action Complaint and should also be dismissed for those reasons.

or state law. *See* SAC ¶ 64. Alternatively, the claims against EPEG should be dismissed under Rule 12(b)(2) because EPEG does not *in fact* have a legal existence and thus the Court lacks jurisdiction over it. Although the Court may dismiss EPEG relying solely on deficiencies in Retailer Plaintiffs' allegations, the Publishers have submitted with this motion the Declaration of Suzanne L. Telsey, which makes plain that EPEG does not have any of the hallmarks of an unincorporated association.

II. **ARGUMENT**

    A. **The Claims Against EPEG Should Be Dismissed Under Rule 12(b)(6)**

Retailer Plaintiffs fail to plead facts establishing that EPEG has both a legal existence and the capacity to be sued, so their claims should be dismissed under Rule 12(b)(6). *See Roby v. Corp. of Lloyd's*, 796 F. Supp. 103, 110 (S.D.N.Y. 1992) ("Capacity to be sued and legal existence are separate and distinct concepts. Both capacity to be sued and legal existence are prerequisites to the suability of an entity[.]"), *aff'd*, 996 F.2d 1353 (2d Cir. 1993).

Federal Rule of Civil Procedure 17(b)(3)(A) provides that capacity to be sued is determined by "the law of the state where the court is located, except that: a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." Rule 17(b), however, "does not confer legal existence or create new types of legal entities." *Roby*, 796 F. Supp. at 109-10. Rather, it assumes the existence of an "unincorporated association" and then sets forth the legal consequences flowing from the existence of such an association. Indeed, for a group to be an "unincorporated association," it "must be recognized as a legal entity by other law." *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 628 (D.N.J. 2010).

As they must, Retailer Plaintiffs acknowledge this threshold requirement for their claims against EPEG. But the best they can offer is the conclusory allegation that "EPEG is an

unincorporated association recognized as a legal entity[.]" SAC ¶ 64.  They do not allege any facts sufficient to support that conclusion, and indeed the body of law identifying unincorporated associations contradicts it.

There is a split of authority as to whether federal or state law determines an entity's status as an unincorporated association.  The weight of the authority (including cases in this District) favors federal law.  *See, e.g.*, *In re Magnetic Audiotape Antitrust Litig.*, No. 99 CIV. 1580 LMM, 2000 WL 1855119, at *1 (S.D.N.Y. Dec. 19, 2000) ("The determination of what constitutes an 'unincorporated association' is a question of federal law.") (internal quotations omitted); *Goldenberg*, 741 F. Supp. 2d at 628 (same); *but see Nahas v. Shore Med. Ctr.*, No. CV 13-6537 (RBK/AMD), 2018 WL 1981474, at *5 (D.N.J. Apr. 27, 2018) ("Rule 17(b)(3) thus instructs the Court to first apply the forum's law to determine whether an entity is an unincorporated association.").  But the Court need not decide the choice-of-law issue because Retailer Plaintiffs' allegations do not establish that EPEG is an unincorporated association under *either* federal or state law.

### i. Retailer Plaintiffs Do Not Allege Facts Establishing That EPEG Is an Unincorporated Association Under Federal Law

Under federal law, an unincorporated association has distinct hallmarks such as a "charter, by-laws or articles, … [an] office or place of business, [a] mailing address, [a] bank account, [or] assets or obligations, and … transact[s] … business." *California Clippers, Inc. v. U.S. Soccer Football Ass'n*, 314 F. Supp. 1057, 1068 (N.D. Cal. 1970) (holding that a committee of the U.S. Soccer Football Association was not an unincorporated association where it did not have any of these hallmarks).  Retailer Plaintiffs fail to plead that EPEG has any of the characteristics necessary to qualify as an unincorporated association.  For example, Retailer Plaintiffs do not and cannot allege that EPEG has a charter, bylaws or articles of incorporation,

3

or that it has an office or place of business. Retailer Plaintiffs have also failed to allege that EPEG has a mailing address or bank account, or any assets or obligations. And they have not alleged that EPEG transacts any business.

Furthermore, while courts have held that, "[f]or the purposes of Rule 17(b) an unincorporated association is a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common objective," the allegation of a common objective alone is insufficient to establish an unincorporated association. *In re Magnetic Audiotape Antitrust Litig.*, 2000 WL 1855119 at *1 (internal quotations omitted). In *Roby v. Corp. of Lloyd's*, the court acknowledged that "groups of insurer-investors … are organized for the purpose of assuming insurance risks," but nevertheless determined that they were not unincorporated associations. 796 F. Supp. at 103-4. The court held that they were not unincorporated associations because "each underwriter was obligated only for the amount of his individual underwriting irrespective of the obligation of any of the other underwriters." *Id.* at 107 (quoting, *Bobe v. Lloyd's*, 27 F.2d 340, 345 (S.D.N.Y. 1927), *aff'd per curiam*, 27 F.2d 347 (2d Cir. 1928)).

Similarly here, each EPEG publisher has sued retailers, including certain Retailer Plaintiffs, to stop them from selling counterfeit and pirated copies of that publisher's own texts. *See, e.g.*, *Cengage Learning, Inc., et al. v. Doe 1, et al.*, No. 1:20-cv-00769 (S.D.N.Y. 2020) (lawsuit brought individually by each of the five current EPEG publishers—not EPEG—against textbook sellers regarding pirated textbooks infringing on each publisher's copyrights); *Pearson Education, Inc., et al. v. FBAAZ Corp.*, No. 1:17-cv-03872 (S.D.N.Y 2017) (lawsuit brought by McGraw Hill, Pearson, and Cengage against textbook sellers—including Retailer Plaintiff Renttext.com, Inc.—regarding counterfeit textbooks infringing on each publisher's copyrights

and trademarks); *McGraw-Hill Global Education Holdings, LLC, et al. v. Wang*, No. 6:17-cv-06574 (W.D.N.Y. 2017) (lawsuit brought by McGraw Hill, Pearson, and Cengage against textbook seller regarding counterfeits infringing on each publisher's copyrights and trademarks).[2] While Retailer Plaintiffs allege that EPEG "jointly prosecutes . . . lawsuits," SAC ¶ 65, the public record of the actual lawsuits filed by the Publishers disproves that empty allegation. Retailer Plaintiffs cannot point to a single lawsuit prosecuted by "EPEG," as opposed to the individual Publishers seeking to enforce their own rights.

Retailer Plaintiffs allege that EPEG has a "shared email address" and a copyrighted website. SAC ¶¶ 109-11. Notably, however, Retailer Plaintiffs do not allege that *EPEG* has registered or owns the website's copyright—they only plead that the website's copyright is "held by some [unspecified] entity." *Id*. ¶ 109. In any event, the mere allegation of internet presence is not sufficient to create a legal entity out of independent actors that do not transact business as a group and that have no legal obligation to protect each other's rights.

Retailer Plaintiffs' allegation that "EPEG is the common name regularly presented to the public as an entity acting as a collective whole" is similarly unavailing, as the "presentation" of a "common name" has no bearing on the legal question of whether a group is a legal entity that can be sued. SAC ¶ 64. Indeed, in *California Clippers*, the court was "convinced that the International Games Committee is just what it purports to be, a committee and not an unincorporated association"—despite publicly using the name "International Games Committee." *California Clippers*, 314 F. Supp. at 1068. Likewise, Retailer Plaintiffs have not alleged that EPEG is anything other than what its name, the "Educational Publishers

---

[2] *See also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).").

Enforcement Group," suggests—a group of publishers that seek to enforce their intellectual property rights in educational publications, which includes members other than the named defendant Publishers. The fact that the publishers chose to name their "group" as a matter of convenience confers no legal status upon it.

### ii. Retailer Plaintiffs Do Not Allege Facts That Demonstrate That EPEG Is An Unincorporated Association Under Delaware Law[3]

Citing Section 3904 of the Delaware Code, Retailer Plaintiffs allege that "EPEG has the capacity to be sued under Delaware law under its common name[.]" SAC ¶ 64. Section 3904 indeed provides for the suability of unincorporated associations in their common name. But like Rule 17(b)(3)(A), Section 3904 does not establish what type of entity qualifies as an "unincorporated association" under Delaware law. It, too, assumes what Retailer Plaintiffs fail to allege—the existence of an "unincorporated association."

Delaware courts have found that a group is an unincorporated association where it exhibits at least two of the following characteristics: it has a charter, leases land, has rules regulating its members' conduct, has membership dues, and/or has elected officers. *See, e.g.*, *Furek v. Univ. of Del.*, 594 A.2d 506, 509 (Del. 1991) (concluding that a university's chapter of a fraternity was an unincorporated association where it had a charter and leased land from the university); *Twardowski v. Jester*, 163 A.2d 242, 243 (Del. Ch. 1960) (finding that a "Gun and Fishing Club" was an unincorporated association where it had rules that "dealt with the conduct

---

[3] Delaware law, rather than New York law, applies because, for a multi-district litigation, the transferee court must apply "'the substantive state law . . . of the jurisdiction in which the action was filed.'" *In re Mirena IUD Prod. Liab. Litig.*, 29 F. Supp. 3d 345, 350 (S.D.N.Y. 2014) (quoting *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993)).

6

of the members," had membership dues, and had elected officers).  Here, Retailer Plaintiffs do not and cannot allege that EPEG has even *one* of those characteristics.

Accordingly, Retailer Plaintiffs have not alleged sufficient facts to establish that EPEG is an unincorporated association under Delaware law.  Retailer Plaintiffs' claims against EPEG should thus be dismissed under Rule 12(b)(6).[4]

### B. The Claims Against EPEG Should Be Dismissed Under Rule 12(b)(2) Because EPEG Does Not Have a Legal Existence

Putting aside the deficiencies of Retailer Plaintiffs' *allegations* as to EPEG's entity status, EPEG is not *in fact* an unincorporated association subject to suit under Rule 17(b)(3)(A), and the Court should dismiss all claims against EPEG for lack of personal jurisdiction under Rule 12(b)(2).  Indeed, courts analyze an entity's status under Rule 17(b) according to Rule 12(b)(2)'s standard.  *See, e.g.*, *MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*, No. 15-CV-3997 JMF, 2015 WL 6685523, at *6 (S.D.N.Y. Oct. 29, 2015) (analyzing issues under Rule 17(b) for a motion to dismiss under Rule 12(b)(2)); *DeSouza v. Pettinaro Constr. Co.*, No. CIV 05-787-SLR, 2009 WL 1220533, at *2 (D. Del. May 5, 2009) (same); *Pisauro v. Silvia*, No. CV 15-02832, 2016 WL 8729339, at *1 (W.D. La. Feb. 26, 2016) (same); *Easter v. Virginia*, No. 4:05CV162, 2006 WL 5915495, at *2 (E.D. Va. Sept. 5, 2006) (same), *aff'd sub nom. Easter v. U.S. Dep't of Health & Human Servs.*, 222 F. App'x 255 (4th Cir. 2007).

---

[4] Because Retailer Plaintiffs have failed to allege that EPEG is an unincorporated association that exists under federal or Delaware law, they have similarly failed to allege that EPEG is a "person" for purposes of suit under Section 1 of the Sherman Act.  *See* 15 U.S.C. § 1; *id.* § 7 (explaining that the categories of "person" who can be sued include "corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country.").  Retailer Plaintiffs' allegation to the contrary, SAC ¶ 64, is a legal conclusion that cannot resuscitate their failed claims against EPEG.  Accordingly, Retailer Plaintiffs' Section 1 claims against EPEG must be dismissed under Rule 12(b)(6).

EPEG is a group of five publishers whose sole focus is on efforts by the publishers to protect their respective intellectual property.[5]  Declaration of Suzanne L. Telsey ("Telsey Decl.") ¶¶ 2, 3.[6]  EPEG has never been registered in any state, nor does it have any bylaws or articles that organize the group.  Telsey Decl. ¶¶ 8, 9.  EPEG also does not have a place of business, a mailing address, or any assets or obligations, and it does not transact any business or initiate lawsuits.  *Id.* ¶¶ 6, 12, 13, 14.  Furthermore, EPEG does not own any copyrights or trademarks, and it does not have any officers, directors or employees.  *Id.* ¶¶ 10, 11.  Therefore, EPEG is not an "unincorporated association" under the relevant case law.  *See* Section II.A, *supra*.  Accordingly, the Court does not have jurisdiction over EPEG, and Plaintiffs' claims against it should be dismissed under Rule 12(b)(2).

### III.   CONCLUSION

For the foregoing reasons, Retailer Plaintiffs' claims against EPEG should be dismissed with prejudice under Rule 12(b)(6).  Alternatively, the claims against EPEG should be dismissed with prejudice under Rule 12(b)(2).

---

[5] Along with the Publishers, Macmillan Learning and Elsevier Inc. are members of EPEG. Telsey Decl. ¶ 2; *see also* SAC ¶¶ 64 n.2, 110.  Neither Macmillan nor Elsevier is a named defendant in this action.

[6] "In evaluating a Rule 12(b)(2) motion, the Court may consider facts outside the pleadings." *Nelly de Vuyst, USA, Inc. v. Europe Cosmetiques, Inc.*, No. 11 CV 1491 VB, 2012 WL 246673, at *5 (S.D.N.Y. Jan. 6, 2012); *see also Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 202 (S.D.N.Y. 2019) ("When the jurisdictional facts are in dispute, the district court may consider materials outside the pleadings, including affidavits and other written materials.") (internal quotations omitted).

Dated:  January 22, 2021

                                                                                    Respectfully submitted,

| | |
|---|---|
| /s/ *Saul B. Shapiro* | /s/ *Eric Mahr* |
| William F. Cavanaugh, Jr. | Eric Mahr |
| Saul B. Shapiro | Andrew J. Ewalt |
| Amy N. Vegari | Richard Snyder |
| PATTERSON BELKNAP WEBB & TYLER LLP | Lauren Kaplin |
| 1133 Avenue of the Americas | FRESHFIELDS BRUCKHAUS DERINGER US LLP |
| New York, New York 10036 | 700 13th Street NW, 10th Floor |
| Tel:  (212) 336-2000 | Washington, DC 20005-3960 |
| Fax:  (212) 336-2222 | Tel:  (202) 777-4500 |
| wfcavanaugh@pbwt.com | Fax:  (202) 777-4555 |
| sbshapiro@pbwt.com | eric.mahr@freshfields.com |
| avegari@pbwt.com | andrew.ewalt@freshfields.com |
| | richard.snyder@freshfields.com |
| *Counsel for Defendant McGraw Hill LLC* | lauren.kaplin@freshfields.com |
| | *Counsel for Defendant Cengage Learning, Inc.* |

 /s/ *Jennifer Quinn-Barabanov*
Jennifer Quinn-Barabanov
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Tel:  (202) 429-3000
Fax:  (202) 429-3902
jquinnba@steptoe.com

Michael Dockterman
STEPTOE & JOHNSON LLP
227 W. Monroe Street, Suite 4700
Chicago, Illinois 60606
Tel:  (312) 577-1300
Fax:  (312) 577-1370
mdockterman@steptoe.com

*Counsel for Defendant Pearson Education, Inc.*